UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYLE E. HODGES,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

                            /

Case No.  1:15-CV-1119

Hon. Ray Kent

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (ECF No. 9.)

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not

conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-six years of age on the date of the ALJ's decision.  (PageID.48, 75.) He completed high school and was previously employed as a spray paint technician, lawn care worker, hog inseminator, and as a lead injection mold machine operator.  (PageID.77, 106.)  Plaintiff applied for benefits on November 19, 2012, alleging disability beginning October 4, 2011, due to congestive

heart failure, atrial fibrillation, a mass in his kidney, kidney stones, blood in his urine, sleep apnea

requiring oxygen assistance, severe fallen arches in both of his feet, stage 2 diabetes, depression,

rheumatoid arthritis, and high blood pressure.  (PageID.114, 175–176.)  Plaintiff's application was

denied on June 13, 2013, after which time he requested a hearing before an administrative law judge

(ALJ). (PageID.126–129, 134–136.) On May 28, 2014, Plaintiff appeared with his counsel before ALJ

Donna Grit for an administrative hearing at which time both Plaintiff and a vocational expert (VE)

testified.  (PageID.66–111.)  In a written decision dated August 8, 2014, the ALJ determined that

Plaintiff was not disabled.  (PageID.48–65.)  On September 8, 2015, the Appeals Council declined to

review the ALJ's decision, making it the Commissioner's final decision in the matter.  (PageID.27–32.)

Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. § 404.1520(a-f).[1]  If the Commissioner can make a dispositive finding at any

point in the review, no further finding is required.  *See* 20 C.F.R. § 404.1520(a).  The regulations also

provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment,

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. § 404.1545.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*. 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at step five.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 4, 2011.  (PageID.53.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) congestive heart failure; (2) hypertension; (3) chronic obstructive pulmonary disease (COPD); (4) obesity; (5) obstructive sleep apnea; (6) spondylosis of the cervical and lumbar spine; and (7) bilateral pes planus with degenerative changes and capsulitis.  (PageID.53.)   At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.55.)   At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform a limited range of sedentary work as defined in 20 CFR 404.1567(a): he cannot lift and/or carry more than ten pounds frequently;

he cannot stand and/or walk for more than a total of two hours in an eight-hour workday; and he cannot sit for more than a total of six hours in an eight-hour workday. He also cannot crawl or climb ladders, ropes, or scaffolds; he cannot work at unprotected heights or around dangerous moving machinery; he cannot balance, stoop, kneel, crouch, or climb stairs/ramps more than occasionally; and he cannot work with exposure to dust, fumes, odors, gases, humidity, poor ventilation, extreme heat or cold more than occasionally.

(PageID.55.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform his past relevant work. (PageID.60.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as an order clerk (3,100 regional and 35,000 national positions), security monitor (1,400 regional and 18,000 national positions), and visual inspector (2,800 regional and 24,000 national positions). (PageID.106–108.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.61.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from October 4, 2011, the alleged disability onset date, through August 8, 2014, the date of decision. (PageID.61.)

## DISCUSSION

### 1.      The ALJ's Step Two Determination.

Plaintiff first argues that he is entitled to relief because the ALJ failed to find that his diabetes and kidney conditions were not severe impairments. (PageID.633–634, 659–661.) At step two of the sequential disability analysis, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to

identify as severe some other impairment constitutes harmless error so long as the ALJ considered the

entire medical record in rendering her decision.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837

F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013)

("so long as the ALJ considers all the individual's impairments, the failure to find additional severe

impairments . . . does not constitute reversible error").

A review of the ALJ's decision reveals that she considered the entire record when

assessing Plaintiff's claim. Moreover, as the ALJ correctly observed, since being hospitalized for

ketoacidosis in February of 2013, Plaintiff's glucose levels have repeatedly been within normal limits.

(PageID.54.)  Similarly, while Plaintiff has sought treatment for a mass on his kidney, and underwent

surgery to remove stones, the stone extraction appears to have been a success, and the ALJ correctly

observed Plaintiff has not pursed treatment for the kidney mass.  (PageID.441.)  While Plaintiff has

complained of residual "occasional" flank, he has still been described as doing well.  (PageID.466.)

In any event, even if it is assumed that these conditions are severe impairments, there is no evidence

that such imposes on Plaintiff limitations greater than those recognized by the ALJ in her RFC

determination. Accordingly, this claim of error is rejected.

### 2.      The ALJ's RFC Assessment.

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's]

limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR

96–8p, 1996 WL 374184 at *1 (July 2, 1996) (a claimant's RFC represents his ability to perform

"work-related physical and mental activities in a work setting on a regular and continuing basis,"

defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff asserts that he

is entitled to relief on the ground that the ALJ's RFC determination is not supported by substantial

evidence.

On October 3, 2011, Plaintiff was referred to a cardiac care clinic after complaining of being unable to walk more than a few feet before experiencing shortness of breath.  (PageID.280.) Plaintiff was  morbidly obese–weighing 512 pounds.  (PageID.274.)  Plaintiff was found to be experiencing "acute respiratory failure secondary to obstructive sleep apnea and obesity hypoventilation syndrome."  (PageID.274, 424.)  A chest x-ray found an enlarged heart, but no acute changes. (PageID.366.)  His sleep apnea caused a low heart rate of 38, and his oxygen saturation percentage was down to 56%.  (PageID.270.)  During hospitalization, he was diagnosed with atrial fibrillation.  It was further determined he had a decreased cardiac function with an ejection fraction of thirty percent. (PageID.275.)  Plaintiff began using a CPAP machine with supplemental oxygen to treat his sleep apnea, was given an anticoagulatant, and a cardioversion to restore normal heart rhythm was ordered. Later that month, he reported losing forty pounds since his hospitalization, and reported feeling much better.  (PageID.424.)  He underwent the cardioversion on November 2, 2011.  Twelve days later he again reported feeling much better.  He was doing a lot of walking to try to lose weight.  (PageID.423.) A month later, in December 2011, there was "nearly total resolution of heart failure symptomatology." Plaintiff reported he could climb a flight of stairs without becoming short of breath.  (PageID.422.)  In March 2012, he again reported feeling well.  He felt his breathing was improved and unimpeded.  He was walking two to three miles a day, and had lost another sixteen pounds since December. (PageID.420.)  An echocardiogram found an ejection fraction of sixty-six percent.  (PageID.420.)  In June 2012, he weighed 446 pounds.  He had no heart failure symptoms.  (PageID.419.)

In November, he had no difficulty breathing.  His lungs were clear.  He had good strength and range of motion of all extremities.  (PageID.331.)  In December 2012, his lungs were again

clear. (PageID.328.)   While he had weakness and pain upon range of motion in his lower extremities, he also had a normal gait and balance. (PageID.328.)

On February 6, 2013, Plaintiff was sent to the ER after feeling tired and ill for the last five days.  He was found to be in diabetic ketoacidosis and was treated with insulin. (PageID.314.)  On follow up it was noted that the "[r]emaining major problem" was the kidney mass mentioned above. (PageID.418.)  In May and June of 2013, Plaintiff reported feeling well with no shortness of breath or syncope. (PageID.415, 453.)  Plaintiff was assessed with a stable cardiac status. (PageID.416.)  In February 2014, Plaintiff was found to have a good control of his glucose.  He expressed unhappiness with being unable to go outside to exercise as it caused him to become short of breath. (PageID.432.) A review of systems, however, found his respiratory system to be normal. (PageID.434.)  In May 2014, Plaintiff appeared to be doing well.  There were no clinical signs of heart failure, though he did have shortness of breath upon exertion. (PageID.463.)  June 2014, Plaintiff was hospitalized after passing out when bending over.  He reported a similar incident several months earlier.  The assessment was that the episode was secondary to a low blood pressure and low heart rate.  It was noted that his medications had not been adjusted since his weight loss, and he was discharged with his medication levels adjusted downward. (PageID.524.)  He was again hospitalized later that month with "profound hypotension and sinus bradycardia." (PageID.570.)  Similar to his prior hospitalization, however, it was determined these symptoms were "mostly likely medication related." (PageID.570.)  After treatment, his blood pressure was normalized and the bradycardia resolved, and he was asymptomatic. His medications were adjusted and he was discharged. (PageID.570.)

The medical evidence reveals that while Plaintiff may have temporarily been experiencing significant symptomatology, his condition responded to appropriate medication and

treatment.  As such, the medical evidence does not suggest that Plaintiff was more limited during the

relevant time period than the ALJ recognized in the severely restricted RFC for a reduced range of

sedentary work. Nevertheless, Plaintiff argues the ALJ's RFC assessment is unsupported by substantial

evidence because it did not account for his need for supplemental oxygen, the side effects of his

medication, and that the ALJ "practically ignored" his obesity and incorrectly found that it "has no

effect."  (PageID.639–640.)  The Court disagrees.[2]

### A.    Supplemental Oxygen.

At a consultative examination on June 27, 2014, Plaintiff was described as being on

supplemental oxygen, or ProAir, as needed.  (PageID.606.)  At the administrative hearing the month

earlier, Plaintiff testified he began using supplemental oxygen in the spring of 2014.  (PageID.99.)  He

reported using it three times a week.  (PageID.98.)  Though he reported Dr. Schumaker prescribed the

use of supplemental oxygen, that prescription does not appear to be contained in the record.  While the

Court does not doubt that Plaintiff presently uses supplemental oxygen, he has not put forth evidence

from an acceptable source detailing how such limits him to an extent greater than that recognized in the

RFC.

### B.    Medical Side Effects.

As for Plaintiff's testimony regarding the side effects of his medications, these

---

[2] Plaintiff introduces his argument regarding both the RFC and Dr. Schumaker's opinion, by stating that the ALJ also "fail[ed] to consider all [his] impairments, fail[ed] to address the affect of each impairment on [his] ability to work, and fail[ed] to make a proper determination regarding [his] credibility."  To the extent Plaintiff raises arguments here beyond those addressed in this decision, the Court finds these arguments to have been waived.  "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); accord *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived.").

allegations must be supported by objective medical evidence.  *See Essary v. Comm'r of Soc. Sec.*, 114

F. App'x 662, 665–66 (6th Cir. 2004) (where claimant testified that she suffered from dizziness and

drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects

where her medical records contain no such reported side effects to her physicians); *Farhat v. Sec'y of*

*Health & Human Servs.*, No. 91–1925, 1992 WL 174540 at *3 (6th Cir. July 24, 1992) ("[claimant's]

allegations of the medication's side-effects must be supported by objective medical evidence").  Here,

Plaintiff claims his medications lead to frequent urination, but he depends only on his testimony in

support.  (PageID.640.)  The ALJ considered Plaintiff's allegations, but found they were not credible.

(PageID.57.)   Plaintiff does not offer a reviewable challenge to the ALJ's credibility analysis.

Furthermore, only a month after testifying Plaintiff reported that he in fact did not experience frequent

urination.  (PageID.613.) Accordingly, Plaintiff has not demonstrated any error on this point.

### C.     Plaintiff's Obesity.

Finally, as regards to Plaintiff's obesity, it is true that the effect of obesity on a claimant's

ability to work must be specifically considered. *See* SSR 02–1P, 2002 WL 34686281 (Sept. 12, 2002);

*Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) ("an ALJ must 'consider the

claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation'")

(quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

The ALJ, however, is not obligated to employ any "particular mode of analysis" when

assessing the impact of a claimant's obesity. *See Shilo*, 600 F. App'x at 959.  Nevertheless, the ALJ

must do more than merely "mention the fact of obesity in passing." *Id.* As the Sixth Circuit recently

reiterated:

> Obesity . . . must be considered throughout the ALJ's determinations,
> 'including when assessing an individual's residual functional capacity,'

> precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *1–2).  The rationale for specifically considering the effect of obesity on a claimant's ability to function and perform work activities is straightforward:

> Obesity 'commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.' For example, 'someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.' The ALJ also must specifically take into account 'the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment,' and consider how 'fatigue may affect the individual' s physical and mental ability to sustain work activity'-especially in 'cases involving sleep apnea.'

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *3–6). But SSR 02–1p cautions that the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will evaluate each case based on the information in the case record." SSR 02–1p, 2002 WL 3468281 at *6.  In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent medical opinions and evidence to show specifically how his obesity exacerbated his other impairments, or interacted with them, to render him incapable of all suitable work.  Plaintiff has not done so here.

Finally, it is patently false that the ALJ "practically ignored" the effects of obesity, as Plaintiff claims.  The ALJ discussed Plaintiff's obesity at length throughout the decision.  At step two the ALJ found that it constituted a severe impairment.  (PageID.53.)  At step three, the ALJ found "no evidence to establish that [Plaintiff] experiences obesity-related functional limitations of his musculoskeletal, cardiovascular, or respiratory systems to the degree required by [a Listing]."

11

(PageID.55.)  Plaintiff does not argue that his obesity causes him to be limited to an extent such that

he meets or equals a Listing.  Finally, at step four, the ALJ provided a thorough and accurate recitation

of the medical record, including a discussion of Plaintiff's obesity.  She concluded by noting that while

she found it "reasonable to conclude that" Plaintiff's impairments, including obesity "compromise

[Plaintiff's] physical capabilities, the overall record does not establish that these impairments impose

limitations greater than those reflected within the residual functional capacity determination of this

decision."  (PageID.59.)  As noted above, this determination is supported by substantial evidence.

Accordingly, the Court finds that the ALJ's RFC determination is supported by

substantial evidence.

### 3.    The ALJ's Assessment of Dr. Schumaker's Opinion.

On November 21, 2013, Dr. Jonathon Schumaker, M.D., Plaintiff's treating physician,

completed a two-page questionnaire regarding Plaintiff's ability to do work-related activities.

(PageID.407–408.)  Dr. Schumaker generally found Plaintiff to be much more limited than that found

by the ALJ.  For example, the doctor indicated Plaintiff could only frequently lift and carry less than

ten pound weights.  He also was only able to stand or walk less than two hours total during an eight-

hour workday, and sit for less than two hours total during the day.  (PageID.407.) Plaintiff would also

need to be able to shift positions at will.  He could only sit for twenty minutes at one time and stand for

ten minutes. (PageID.407.)  Plaintiff would also need to elevate his legs every one to two hours.  When

asked for the medical findings in support of these limitations, the doctor noted Plaintiff's diagnoses of

osteoarthritis, degenerative disc disease, chronic heart failure, and morbid obesity.  (PageID.407.)  Dr.

Schumaker further remarked that Plaintiff had several postural limitations including an inability to

stoop, crouch, and climb ladders.  Plaintiff could only rarely twist and climb stairs.  (PageID.408.) His

limitations would also affect his ability to reach, finger, push, pull, and handle, though the doctor did

not explain exactly how or to what extent Plaintiff would be limited in those capabilities.[3]

(PageID.408.) Finally, Dr. Schumaker indicated that were he to work, Plaintiff could be expected to

be absent more than four days per month, concluding that Plaintiff "doesn't have lung capacity [and]

will be easily fatigued [and short of breath]." (PageID.408.) The ALJ stated she gave only little weight

to the opinion because:

> [S]uch is internally inconsistent and not supported by the medical
> evidence of record as a whole. I note that at the time of this assessment,
> no pulmonary function studies had been conducted to support his
> statement that the claimant has no lung capacity. There was also no
> evidence that any diagnostic testing of his lumbar spine had been
> performed to support the doctor's diagnosis of "osteoarthritis," nor was
> there any evidence to support the limitations of the claimant's upper
> extremities he cited. I additionally note that Dr. Schumaker indicated he
> considered it necessary that the claimant walk around for five minutes
> every ten minutes which would equate to walking a total of 20 minutes
> per hour. This amount equates to walking a total of two hours and 40
> minutes during the course of an eight-hour workday yet Dr. Schumaker
> also indicated that he considered the claimant's "maximum" ability to
> stand and walk during an eight-hour workday to be "less than two
> hours." Again, due to the inconsistencies of Dr. Schumaker's
> assessment and the lack of objective evidence to substantiate his
> conclusions, little weight was accorded this opinion.

(PageID.59–60.)

The treating physician doctrine recognizes that medical professionals who have a long

history of caring for a claimant and his maladies generally possess significant insight into his medical

condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give

controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically

---

[3] Dr. Schumaker included only a vague statement that Plaintiff's capabilities here would be diminished. But this remark does nothing to indicate the extent of Plaintiff's limitations in this respect or to indicate that Plaintiff's limitations may be more limited than the ALJ found.

acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with

the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365,

375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon

sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir.,

Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir.

1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the

medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See*

*Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip*

*v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ

must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported

by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for

that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*,

378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported

by any objective findings and are inconsistent with other credible evidence" is, without more, too

"ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ

must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the

following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature

and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion

with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.

*Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these

factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her

assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*,

214 F. App'x 448, 450 (5th Cir., Jan. 19, 2007).

    In her decision, the ALJ discussed at length the medical evidence. (PageID.55–60). With

respect to Dr. Schumaker's opinion, as noted above, the ALJ discounted such on the ground that it

lacked any supporting studies that would substantiate the doctor's report that Plaintiff had no lung

capacity. (PageID.59–60.) Similarly the ALJ noted the lack of diagnostic testing on Plaintiff's spine

that would support a diagnosis of osteoarthritis. Furthermore, the ALJ found the opinion to be

internally inconsistent. (PageID.59–60.) The Court finds this explanation to be well reasoned. The

difficulty here for Plaintiff is that, contrary to the form's requirement that the doctor "identify the

particular medical findings (e.g., physical examination findings, x-ray findings, laboratory test results,

symptoms (including pain), etc.) that support your opinion regarding any limitations" Dr. Schumaker

provided only a few diagnoses in support of his opinion. It is well established, however, "the mere

diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the

limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400,

2000 WL 687680 at \*5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir.

1988)); *see, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). As such, the ALJ's conclusion

that the opinion was not well supported and is internally inconsistent is entirely correct.

    Plaintiff does not disagree with any of this, or argue that such cannot constitute good

reasons for discounting a treating physician's opinion, but argues instead that the opinion is consistent

with the record.  (PageID.638.)  There are two problems with this argument.  First, it ignores the fact

that the ALJ found the opinion to be not well supported, as is required to assign an opinion controlling

weight.  *See Gayheart*, 710 F.3d at 375–76 (quoting 20 C.F.R. § 404.1527).  Second, as discussed

above, the medical evidence does not support Dr. Schumaker's opinion that Plaintiff experienced

greater limitations than recognized by the ALJ.  Accordingly, the Court finds that the ALJ articulated

sufficient reasons for discounting Dr. Schumaker's opinions.  To the extent Plaintiff argues the ALJ's

decision must be reversed for failure to consider the doctor's opinion consistent with the factors

enumerated in 20 C.F.R. § 404.1527, he cannot succeed.  It is clear the ALJ understood her obligation

to evaluate the opinion under this regulation.  (PageID.56.)  She also explicitly acknowledged the

doctor's status as Plaintiff's primary care physician. (PageID.59.) Regardless of the other factors which

the regulation required the ALJ to consider, the evidence and opinions mentioned thus far provide

substantial evidence for the ALJ's decision to accord Dr. Schumaker's opinion little or no weight. No

matter how long the doctor had been treating Plaintiff,  or how much experience he has with such

conditions, the record supports the ALJ's findings that his opinion was not well supported, was

internally consistent, and was inconsistent with the evidence of record.

### 4.      The ALJ's Step Five Determination.

Plaintiff finally argues that the ALJ's finding at step five of the sequential evaluation

process is unsupported by the evidence.  While the ALJ may satisfy her burden through the use of

hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's

physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there

existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 7,300 regional and 77,000 national jobs in the economy.  The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert.  Indeed, Plaintiff's argument here is little more than a rehash of the arguments the Court has already rejected.  The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated:  March 24, 2017                                    /s/ Ray Kent
                                                               RAY KENT
                                                               United States Magistrate Judge